UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER SWAHN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | No. 2:18-cv-3172-KJN<br><br>ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 9, 10) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying his application for Title II disability insurance benefits.[1] In his summary judgment motion, Plaintiff primarily contends the Administrative Law Judge ("ALJ") erred in weighing medical evidence and testimony regarding Plaintiff's physical and mental impairments, erred in formulating Plaintiff's residual functional capacity, and erred in finding Plaintiff could perform past work. The Commissioner opposed and filed a cross–motion for summary judgment.

After considering the parties' written briefing, the record, and the applicable law, the Court GRANTS the Commissioner's motion for summary judgment, DENIES Plaintiff's motion, and AFFIRMS the decision.

///

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and the parties consented to the jurisdiction of the undersigned for all purposes. (See ECF Nos. 5, 6.)

1

# I. BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS[2]

Plaintiff applied for supplemental security income on March 4, 2015, alleging an onset date of January 1, 2012. (Administrative Transcript ("AT") 197.) Plaintiff claimed the following medical conditions: "Neuropathy in legs (severe pain). Diabetes. Hepatitis C, Back Pain, Sleeping problems. Hearing loss. Chronic pain. Panic attacks. Anxiety." (AT 121, 133.) Plaintiff's application was denied initially and again upon reconsideration. (Id.) Plaintiff, aided by an attorney, sought review of these denials with an ALJ. (AT 140–41.) At an April 12, 2017 hearing, Plaintiff testified about his conditions, and the ALJ heard testimony from a vocational expert regarding Plaintiff's ability to work. (AT 37–92.)

On September 6, 2017, the ALJ issued a decision determining that Plaintiff was not disabled for the relevant period. (AT 21–30.) At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since January 1, 2012. (AT 23.) At step two, the ALJ found Plaintiff to have had the following severe impairments: "lumbar degenerative disk disease with radiculopathy, peripheral neuropathy, diabetes mellitus, bilateral hearing loss, right shoulder impingement, and obesity." (Id.) However, the ALJ determined at step three that these impairments did not meet or medically equal the severity of a listed impairment. (AT 25).

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571–76; Bowen v. Yuckert, 482 U.S. 137, 140–42 (1987). The following summarizes the sequential evaluation:

> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

Based on this information, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform "a reduced range of light work, with the following exceptions:

> [H]e can lift carry push or pull 20 pounds occasionally and 10 pounds frequently; he can sit for eight hours of an eight-hour workday with normal breaks, but he requires a sit/stand option at the workstation and can sit for 30 to 40 minutes before he has to change positions by standing up; he can stand and walk for six hours of an eight-hour workday with normal breaks, but he cannot engage in prolonged standing or walking-specifically he can stand or walk for 20 to 30 minutes at a time and then needs a change in position; he can occasionally stoop, crouch, crawl, or kneel; he can never climb ladders, ropes, or scaffolds; he can frequently work above the right shoulder, and he has no limitations on the left shoulder; he can occasionally operate foot pedals; he cannot work in an area with loud noise-that is noisier than the standard office-without ear protection; he cannot work at unprotected heights or around unprotected hazardous machinery; he can receive, remember, understand, and carry out both simple and detailed job instructions; he can frequently follow complex instructions; he can interact with the public coworkers and supervisors; he can adjust to changes in the workplace, and he can make workplace judgments.

(AT 25, cleaned up.) In reaching this conclusion, the ALJ stated that this included considering Plaintiff's expressed symptoms, the objective medical evidence in the record, and the opinion evidence given by the examining and consulting physicians. (AT 23–29.) Relevant here, the ALJ found that the moderate–to–severe limitations occasionally opined upon by an examining physician, a physician's assistant, and others were unsupported by the medical evidence and otherwise inconsistent with the remaining medical record. Further, the ALJ discounted Plaintiff's claims of severity of his impairments, and similarly discounted Plaintiff's wife's statements. (AT 27, 29.) Based on Plaintiff's background, testimony, earnings record, and the testimony of the Vocational Expert, the ALJ concluded at step four that Plaintiff was capable of performing past work as a manager of land development. (AT 29–30.)

On October 17, 2018, the Appeals Council denied Plaintiff's appeal. (AT 1–7.) Plaintiff then timely filed this action requesting judicial review of the Commissioner's final decision, and the parties filed cross–motions for summary judgment. (ECF Nos. 1, 9, 10, 11.)

///

///

///

## II. STANDARD OF REVIEW

The Court reviews the Commissioner's decision de novo, and should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." Buck v. Berryhill, 869 F. 3d 1040, 1048 (9th Cir. 2017). Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Edlund v. Massanari, 253 F. 3d 1152, 1156 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Id. The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F. 3d 1035, 1038 (9th Cir. 2008). Further, the court may not reverse the ALJ's decision on account of harmless error. Buck, 869 F. 3d at 1048.

## III. ISSUES PRESENTED

Plaintiff alleges multiple errors on the ALJ's part, including assigning error:

A. at step 2 by failing to include Plaintiff's anxiety, hearing loss, obesity, or diabetes as severe conditions;
B. in discounting the more–moderate mental and physical limitations opined upon by various medical professionals;
C. in discounting the statements made by Plaintiff and his wife concerning the severity of Plaintiff's symptoms;
D. in forming the RFC without; and
E. at step 4 by improperly finding that Plaintiff could return to his prior work.

In his brief, Plaintiff asserts additional errors, which the Court discusses at various points below. Plaintiff requests either a remand for benefits or further proceedings. (ECF No. 9.)

The Commissioner counters each of Plaintiff's arguments, contending that substantial evidence supported the ALJ's assessment of Plaintiff's mental functions. Thus, the Commissioner maintains the ALJ's opinion should be affirmed. (ECF No. 24.)

## IV. LEGAL STANDARDS

A. Evaluation of Medical Source Opinions

The weight given to medical opinions depends in part on whether they are proffered by

treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F. 3d 1195, 1201–02 (9th Cir. 2001); Lester v. Chater, 81 F. 3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F. 3d at 1202. The medical opinion of a claimant's treating doctor is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record. 20 C.F.R. § 404.1527(c)(2)–(6).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. Lester, 81 F. 3d at 831. A contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. An ALJ provides specific and legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings." Magallanes v. Bowen, 881 F. 2d 747, 751 (9th Cir. 1989). Conversely, to reject an uncontradicted opinion of a treating or examining doctor, the ALJ must state "clear and convincing reasons that are supported by substantial evidence." Ryan v. Comm'r, 528 F.3d 1194, 1198 (9th Cir. 2008).

In addition to considering the medical opinions of doctors, an ALJ must consider the opinions of medical providers who are not within the definition of "acceptable medical sources." See 20 C.F.R. § 404.1527(b), (f). While those providers' opinions are not entitled to the same deference, an ALJ may give less deference to "other sources" only if the ALJ gives reasons germane to each witness for doing so. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). The same factors used to evaluate the opinions of medical providers who are acceptable medical sources are used to evaluate the opinions of those who are not. Id. (citing § 404.1527(f)).

5

B. Evaluation of a Claimant's Testimony and Third–Party Reports

In evaluating the extent to which an ALJ must credit the claimant's report of his symptoms, the Ninth Circuit has set forth the following two–step analysis:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

Revels v Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting Garrison v. Colvin, 759 F.3d 995, 1014–15 (9th Cir. 2014). To reject third-party reports of a claimant's impairments, the standard is much lower: an ALJ need only "give reasons that are germane to each witness." Id. (citing Molina, 674 F.3d at 1114).

## V. **DISCUSSION**

**A. The ALJ did not commit reversible error in failing to find Plaintiff's anxiety, hearing loss, obesity, or diabetes to be severe at step 2.**

Under step 2, the ALJ is to classify any impairments as either "severe" or "non–severe." See 20 C.F.R. §§ 404.1520, 404.1571–76. A "severe" impairment is one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). The step 2 assessment is a "de minimus screening to dispose of groundless claims." Edlund, 253 F3d at 1158. Any failure to classify an impairment at step 2 is harmless if the ALJ considered the impairment when assessing the RFC. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

Here, Plaintiff argues the ALJ erred at step 2 by failing to assess his anxiety, hearing loss, obesity, and diabetes as severe in step 2. However, the ALJ discussed these conditions when he formulated and justified Plaintiff's RFC. (See AT 24–29.) Therefore, any failure to classify these conditions at step 2 was harmless. Lewis, 498 F.3d at 911.

**B. The ALJ provided the appropriate reasons to discount various medical opinions.**

Plaintiff takes issue with the ALJ's treatment of a number of opinions of certain mental– and physical–health professionals. (See ECF No. 9 at pp. 14–17.) For clarity, the Court examines these separately, as the standards and applicable law differs for each.

   1. <u>Physician Assistant Hobbs's Opinions of Mental and Physical Impairments</u>

Plaintiff contends that the ALJ inappropriately ignored "deficits in multiple areas of function," as found by P.A. Hobbs, Plaintiff's "treating" physician assistant. This includes Hobbs's check–box rating of Plaintiff's mental functions as either "good" or "fair."[3] (See AT 411, 311.) This also includes Hobbs's assessment of Plaintiff's physical abilities, as noted in a July 2016 exam. (AT 453.) Despite Plaintiff's assertions, the applicable regulations require the Court categorize Hobbs, a physician's assistant, as an "other source."[4] See 20 C.F.R. § 416.913 (2013) (defining "other sources" as "Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists).") Thus, the ALJ only needed to provide germane reasons for discounting Hobbs's opinion. <u>Molina</u>, 674 F.3d at 1111.

Here, the ALJ stated that he gave little weight to Hobbs's assessment of Plaintiff's mental impairments because "there is no indication that [] Hobbs has expertise in mental health

---

[3] This also includes, as far as the Court can tell, information contained in Hobbs's letter to the appeals council regarding Plaintiff's anxiety and panic attacks. (AT 36.) It appears the Appeals Council disregarded Hobbs's letter under the rationale that it applied to Plaintiff's condition after the ALJ's December 2016 decision. (See AT 2.) Plaintiff argues this letter was left out of the Administrative Transcript, but the Court has in fact received it as part of the record. (See AT 36.) Thus, Plaintiff's argument that the record is incomplete is without merit. (ECF No. 9 at p. 23.) Insomuch as Plaintiff is attempting to argue that Hobbs's letter should be considered "new evidence," the Court finds this argument waived, as in his brief Plaintiff simply quoted the letter at length and stated in a conclusory fashion that it is "critical in evaluating Plaintiff's claim." (ECF No. 9 at p. 23.) See <u>Indep. Towers of Washington v. Washington</u>, 350 F.3d 925, 929 (9th Cir. 2003) ("A bare assertion of an issue does not preserve a claim.").
Even assuming for the sake of argument the issue had not been waived, it would have no effect on the Court's rationale—given that the ALJ still only needed to provide a germane reason for discounting Hobbs's opinion.

[4] The Court is sympathetic to Hobbs's statement that "If all patients that need mental health treatment were required to see an expert[,] very few would get the care needed." (AT 36.) The Court is, however, bound by the law governing this issue as was in effect at the time.

treatment, and, as discussed above, [Hobbs's] treatment notes do not include any mental status examination findings." (AT 25.) Earlier in the decision, the ALJ cited to multiple medical records indicating "only occasional mental[–]symptom complaints, with no objective findings." (See AT 24.) As to Hobbs's physical assessments, the ALJ noted Plaintiff's "above-discussed treatment records document very few objective or clinical findings, and neither those findings nor the MRI and EMG/NCS findings support such extreme limitations." (See Id., citing 326–403; 421–45; 482–508.) These are acceptable reasons under Ninth Circuit precedent for the ALJ to discount Hobbs's opinions. See Molina, 674 F.3d at 1111 (finding the ALJ gave several germane reasons for discounting the PA's opinion, where, among other things, conflicting testimony supported the ALJ's findings and the disregarded assessments of the PA "consisted primarily of a standardized, check-the-box form in which she failed to provide supporting reasoning or clinical findings."); see also Tristan v. Berryhill, 752 F. App'x 516, 517 (9th Cir. 2019) (lack of support by clinical findings is specific and legitimate reason to reject opinion) (citing Batson v. Comm'r, 359 F.3d 1190, 1195 (9th Cir. 2004)).

Plaintiff relies on Gomez v. Chater, 74 F3d 967, 971, (9th Cir. 1996), for the proposition that a nurse practitioner who works in conjunction with a physician is an "acceptable source." (ECF No. 9 at p. 15, fn. 1.). The implication is that, if Hobbs were to be considered a "treating source," his opinion could not be so easily dismissed. See Holohan, 246 F. 3d at 1202. However, Gomez is unhelpful for the simple fact that it is no longer good law—the applicable regulation interpreted in Gomez was superseded over a decade ago. See Hudson v. Astrue, 2012 WL 5328786, at *4 (E.D. Wash. Oct. 29, 2012) ("Even if the report . . . were considered the findings of an "interdisciplinary team," as applied in Gomez[,] 20 C.F.R. §§ 404.1513(a) and 416.913(a) have been amended since the Gomez decision, and the Commissioner no longer includes "interdisciplinary team," under the definition of "acceptable medical sources.").

2. Dr. Liddell's "Moderate" Mental Restrictions, June 2015 Consulting Exam

Plaintiff takes issue with the ALJ's disregard of three conclusions stated by Dr. Liddell, as part of her June 2015 consultative examination. (AT 414–19.) Because of Plaintiff's "current level of anxiety and depression," Dr. Liddell stated that Plaintiff was moderately impaired in his

8

ability to: (i) deal with various changes in the work setting, (ii) focus and concentrate, and (iii) complete a normal workday/work week without interruptions from [his] psychiatric condition[s]." (AT 419.) The ALJ rejected these limitations as unsupported by Plaintiff's "minimal treatment history and the lack of significant clinical and objective mental findings." (AT 25.)

As with PA Hobbs, the ALJ adequately cited to multiple medical records earlier in the decision indicating "only occasional mental[–]symptom complaints, with no objective findings." (See AT 24.) These are specific and legitimate reasons for rejecting the more–restrictive portions of Dr. Liddell's opinions. See, e.g., Bramble v. Berryhill, 692 F. App'x 862 (9th Cir. 2017) ("The ALJ provided several specific and legitimate reasons supported by substantial evidence for rejecting [the doctor's] medical opinion: (1) internal inconsistencies in the opinion, (2) lack of clinical findings to support the opinion, and (3) inconsistencies with [the plaintiff's] own testimony.") (citing Bayliss v. Barnhart, 427 F.3d 1211, 1216-17 (9th Cir. 2005)).

### 3. Plaintiff's remaining arguments re: medical opinions and evidence

Plaintiff asserts in a general fashion the ALJ failed to take a number of other impairments into account in formulating the RFC. (ECF No. 9 at pp. 17–18.) These impairments include Plaintiff's hearing loss, diabetes, obesity, lack of sleep, and medication use. (Id.) However, a review of the decision indicates the ALJ did so consider these facts. (See AT 24–29). Thus, Plaintiff's contentions are meritless. Valentine v. Comm'r., 574 F.3d 685, 692 (9th Cir. 2009) ("We reject any invitation to find that the ALJ failed to account for [the claimant's] injuries in some unspecified way.").[5]

////

////

---

[5] Plaintiff also appears to complain of the ALJ's assigning "little weight" to Dr. VanKirk's opinions and "some weight" to the state–agency consulting physicians regarding Plaintiff's physical limitations. (ECF No. 9 at p. 16.) However, it appears these physicians' assessment allowed for a *less* restrictive RFC than the ALJ formulated. (See AT 29, "[The] evidence supports the greater limitations determined in this decision such as the sit/stand option the limitations on walking and the noise limitation.") The undersigned construes Plaintiff's brief not as arguing these as points of contention, because to do so would result in an absurdity.

9

**C. The ALJ properly discredited Plaintiff's and his wife's statements.**

Plaintiff asserts the ALJ erred in his assessment of Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms, as well as similar statements from Plaintiff's wife. (ECF No. 9 at pp. 18–19.)

Specifically, Plaintiff claims the ALJ, in rejecting the more–severe portions of Plaintiff's testimony, only offered a single boilerplate sentence with no legal analysis. (Id. at p. 18.) It is true the ALJ only included a boilerplate sentence in the paragraph responding to Plaintiff's testimony. (See AT 27: "After careful consideration of the evidence, the undersigned finds that the claimants medically determinable impairments could reasonably be expected to produce the above-discussed alleged symptoms. However his statements concerning the intensity persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."). Significantly, the Court takes the ALJ's phrase "the reasons explained in this decision" as an indication that the reader should look to other portions of the decision for the ALJ's support. The ALJ's analysis of the medical evidence regarding Plaintiff's mental limitations is contained under Point 3 of the decision (AT 24–25), and the analysis regarding Plaintiff's physical limitations is under Point 5 (AT 28–29.) While the ALJ could have been more explicit in pointing to where "in this decision" the analysis was located, the ALJ's rationale can be reasonably discerned. See Treichler v. Comm'r, 775 F.3d 1090, 1099 (9th Cir. 2014) (describing an ALJ error as harmless if "the ALJ's path may reasonably be discerned despite the error.") Given that Plaintiff's assignment of error amounts to an assertion that the ALJ should have taken a point–by–point approach, which is not required, the undersigned finds no error in the treatment of Plaintiff's subjective–symptom testimony. See Bayliss, 427 F.3d at 1217 ("In making his RFC determination, the ALJ took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints. Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary.").

Plaintiff then asserts the ALJ should not have rejected Plaintiff's wife's testimony just

because she is a family member, citing to Regennitter v Commissioner, 166 F3d 1294, 1296 (9th Cir. 1999). However, a plain read of the ALJ's decision shows this was not the reason Plaintiff's wife's testimony was rejected. Instead, the ALJ rejected her testimony about the severity of Plaintiff's symptoms because it was consistent with Plaintiff's testimony—which the ALJ had already rejected. (AT 29.) The ALJ also stated that as a layperson, his wife's testimony was "far less persuasive on those issues than are the opinions of medical professionals." (Id.) Plaintiff's wife is considered an "other source," and so the ALJ only needed provide a germane reason for discounting her testimony. See 20 C.F.R. § 416.913(d)(4) (2013) (defining "other sources" as "for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy."); Revels, 874 F. 3d at 655 (citing Molina, 674 F.3d at 1114).

Thus, the undersigned finds no reversable error in the ALJ's treatment of Plaintiff's and his wife's testimony concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms.

**D. The RFC is based on substantial evidence.**

Having found no error in the ALJ's treatment of the medical evidence, opinion evidence, and subjective–symptom testimony, the Court turns to Plaintiff's generic challenge that the RFC is not based on substantial evidence. (ECF No. 9 at pp. 19–22.)

As the Commissioner notes, the applicable regulations assign formulation of the RFC to the ALJ. 20 C.F.R. § 404.1527(d)(2) ("[Y]our residual functional capacity (see §§ 404.1545 and 404.1546), or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner."); Broomfield v. Berryhill, 2018 WL 1367569, at *5 (E.D. Cal. Mar. 16, 2018) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.") (quoting Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001)).

Viewed in light of the record as a whole, the ALJ properly weighed the medical evidence and opinion evidence in crafting Plaintiff's RFC, such that substantial evidence supports the analysis. Buck, 869 F. 3d at 1048; Edlund, 253 F. 3d at 1156. As described earlier in this order, the ALJ considered the opinions of P.A. Hobbs, Dr. Liddell, and the state agency psychologist in

dissecting Plaintiff's alleged mental impairments. (See AT 24–25.) No error can be found in the ALJ's reliance on Dr. Liddell's examination records and opinion, nor on the opinion of the non–examining psychologist as it was consistent with the medical evidence. Holohan, 246 F. 3d at 1201–02 (describing the general weight assigned to treating, examining, and non–examining physicians); Magallanes, 881 F.2d at 752 (reports of non–examining physicians can serve as substantial evidence); Molina, 674 F.3d at 1111 (P.A.'s opinion properly rejected with germane reasons). Similarly, in analyzing Plaintiff's physical impairments, the ALJ properly weighed the opinions and evidence from Plaintiff's interactions with P.A. Hobbs, Dr. Ramchandran (an orthopedic surgeon who treated Plaintiff's spine), and the state agency consultants. (AT 28–29.) In fact, the ALJ at times discounts the opinions of these physicians because they were not *restrictive enough*, thereby allowing for an RFC more favorable to Plaintiff. (See AT 29.[6]) As with the mental limitations, the undersigned finds no error in the ALJ's dissection of Plaintiff's physical condition. Magallanes, 881 F.2d at 753.

In Plaintiff's brief, he lists a number of reports in support of his contention that the RFC was not based on substantial evidence. However, as discussed in Section B above, the ALJ provided the appropriate reasons for discounting these opinions and findings. It is the ALJ's duty to resolve conflicts and ambiguities in the record, and the Court is required to uphold the ALJ's conclusions where "the evidence is susceptible to more than one rational interpretation." Edlund, 253 F. 3d at 1156; Tommasetti, 533 F. 3d at 1038.

**E. The ALJ properly found Plaintiff could return to work similar to his prior work.**

Having found no error in the ALJ's analysis at step 2, nor in his formulation of the RFC, the undersigned reaches Plaintiff's first argument: that the ALJ "improperly found that Plaintiff could return to prior relevant work." (ECF No. 9 at pp. 9–13.)

---

[6] The ALJ stated: "[The state agency medical consultants] did not have the opportunity to consider the evidence received at the hearing level including the audiology report the December 2016 MRI report the EMG/NCS report or the surgery report. That evidence supports the greater limitations determined in this decision such as the sit/stand option the limitations on walking and the noise limitation. In addition the State agency consultants did not adequately consider the claimants subjective complaints such as his allegations of recurrent right shoulder pain sometimes discounting the opinions." (AT 29.)

At the April 12, 2017 hearing, the ALJ heard testimony from a Vocational Expert ("VE") regarding Plaintiff's ability to perform his past relevant work as a "Manager of Land Development." (AT 86–91.) In finding this occupation correlative to Plaintiff's prior work, the ALJ cited to Plaintiff's "documented vocational background, testimony, and earnings record," as well as the VE's testimony. (AT 30.) The ALJ cites to Plaintiff's disability report, where Plaintiff named his type of business as "Hotel development/real estate." (AT 215.) Plaintiff described his job duties as: "1. Selected locations for hotels. 2. Handled real estate negotiations/price. 3. Worked with architects on site plan. Also worked with civil engineers. 4. In charge of all city and state permits necessary to build hotels. 5. Stayed involved with the hotel development project until Certificate of Occupancy was received." (AT 216.) Plaintiff also stated he would lift and carry heavier effects and perform physical labor "as needed to help staff/workers," though he stated "those types of duties were not my primary job." (AT 244.) The ALJ then indicated the VE considered this to be a "manager of land development," which was listed as "light" work in the Dictionary of Occupational Titles. (AT 30; 86.) The ALJ submitted a hypothetical to the VE based on Plaintiff's RFC, and the VE testified that a person with that RFC could perform the "manager of land development" occupation. (AT 87–88.) Plaintiff's attorney at the hearing then cross–examined the VE, posing two more–restrictive hypotheticals and questioned the difference between the DOT's classification of "light" with Plaintiff's "having to lift occasionally the concrete bags and 2 x 4's up to 50 pounds[.]" (AT 90.) To the latter point, the VE testified that while Plaintiff may have gone above and beyond in how he actually performed the job, Plaintiff could do the job "as it's normally performed in the workplace. (AT 90–91.) The ALJ concluded Plaintiff "was able to perform [this occupation] as it is generally performed, but not as he actually performed it." See 20 C.F.R. § 404.1560(b)(2) ("A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy.").

Plaintiff lists three interrelated challenges concerning this portion of the ALJ's analysis. First, Plaintiff contends the ALJ's analysis lacks the requisite fact finding; and second, that the

VE's testimony was "misrepresented." (ECF No. 9 at pp. 10–12.) Third, these alleged errors, Plaintiff contends, caused the VE's testimony to be "unsubstantial." (Id. at p. 13.) However, as described above, it is clear to the Court that the ALJ stated sufficient facts on which to base his conclusion—including a citation to Plaintiff's employment documents and description of his prior work. (See AT 30, citing 215; 216; 244.) Similarly, the ALJ does not appear to have "misrepresent[ed]" the VE's testimony. Instead, he asked the VE whether she (i) reviewed Plaintiff's vocational history and, if so, (ii) could provide her expertise as to how the DOT would classify Plaintiff's prior work. (See AT 30, citing AT 86.) The VE found corroboration between Plaintiff's job description and the "manager of land development" occupation, which the ALJ properly relied upon in finding Plaintiff could perform his past work as generally performed in the national economy. Stacy v. Colvin, 825 F.3d 563, 570 (9th Cir. 2016) (finding substantial evidence that the plaintiff could perform past work "as it is generally performed in the national economy," where the DOT's classification conformed to the plaintiff's prior work); Edlund, 253 F. 3d at 1156 (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); see also Treichler, 775 F.3d at 1099 (affirming where "the ALJ's path may reasonably be discerned . . . .."). Thus, the undersigned assigns no error here.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Commissioner's motion for summary judgment (ECF No. 10) is GRANTED;
2. Plaintiff's motion (ECF No. 9) is DENIED;
3. This decision of the Commissioner is AFFIRMED; and
4. The Clerk is directed to enter judgment in the Commissioner's favor and close the case.

Dated: January 15, 2020

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

swah.3172

14